J-A16001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JESSE T. SHIFLET | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KATIE M. SHIFLET | : | No. 194 MDA 2023 |

Appeal from the Order Entered January 5, 2023
In the Court of Common Pleas of York County
Civil Division at No(s):  2018-FC-001830-03

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY PANELLA, P.J.:  **FILED: SEPTEMBER 13, 2023**

Jesse T. Shiflet ("Father") appeals the January 5, 2023 order awarding Katie M. Shiflet ("Mother") (collectively, "Parents") primary legal and physical custody of Parents' biological son, C.S., born in November 2012, and biological daughter, I.S., born in May 2014 (collectively, "Children"). While we affirm the custody order, we also remand with instructions for the trial court to issue a ruling with respect to Father's outstanding counterpetition for contempt.

Parents married in December 2008 in York County, Pennsylvania. Children were born in Harrisburg, Pennsylvania. The family relocated to Fairbanks, Alaska, in 2015. Ultimately, the couple divorced in 2016. On June 18, 2016, Parents filed a stipulation and agreement in the Fourth Judicial District of Alaska, pursuant to which Parents agreed to share legal and physical custody of Children. *See* Parenting Plan, 6/18/16, at ¶¶ 3-4. In 2018, Parents

returned to Pennsylvania and submitted a stipulation and agreement in the York County Court of Common Pleas ("the trial court") seeking to reaffirm the Alaska agreement in the Commonwealth. *See* Stipulation and Agreement, 9/10/18, at 1-12 ("the Custody Stipulation").

Under this agreement, Parents (1) continued to share legal custody of Children equally; and (2) agreed to the following physical custody arrangement: "[Children] shall live with [Parents] on the following schedule: Summer, academic breaks, and 3 weekends a month during school year with [Father]. School year and two weekends a month during the summer with [Mother]." Custody Stipulation at ¶¶ 2, 3(C) (cleaned up). The stipulation was approved by the trial court in October 2018.

Also in 2018, Father married his second wife, Leah Shiflet. *See* N.T., 12/27/22, at 69-70. In November 2019, Mother filed a petition for contempt alleging that, *inter alia*, Father and Leah Shiflet had written disparaging messages in a birthday card for Mother, which Children had seen and inquired about. *See* Petition for Contempt, 11/12/19, at ¶¶ 6-15. Ultimately, the petition was resolved by mutual agreement without a finding of contempt. In 2020, Father and Leah Shiflet divorced. *See* N.T., 12/27/22, at 69-70.

In October 2021, Father married Jessica Shiflet ("Stepmother"). *See id*. at 27-28. Contemporaneously, Parents' relationship and ability to cooperate began to deteriorate, beginning with a significant disagreement concerning whether I.S. should repeat the first grade. *See id*. at 23-24, 48-49. While

Father strongly advocated in favor of holding I.S. back due to her lackluster "academic performance," Mother was concerned that doing so would harm I.S.'s social network within her class. *See id*. at 23-24, 169. Father submitted paperwork to I.S.'s school in an attempt to ensure that I.S. repeated the first grade, but Mother refused to give her consent when contacted by the school. *See id.* at 23-24. Thereafter, a number of additional disputes arose between Parents concerning I.S.'s health and education, Children's extracurricular activities, Stepmother's participation in meetings concerning Children's education, and various expenses.

On March 7, 2022, Father filed a petition to modify custody. Specifically, Father requested changes to the physical custody aspects of the Custody Stipulation, as follows: (1) during the school year, Mother would have physical custody of Children Monday through Friday and the first weekend of every month, while Father would have physical custody of Children on all remaining weekends and during all academic breaks; and (2) during the summer months, Father would have primary physical custody of Children at all times, except for the first weekend of each month when Mother would have shared physical custody. *See* Petition for Modification, 3/7/22, at ¶ 5(a)-(c). At the time of this filing, Father was represented by Brandy Grace Hoke, Esquire.

Between March 24 and April 5, 2022, Mother filed an amended a petition for contempt, which alleged that Father had violated the Custody Stipulation by: (1) failing to support C.S.'s participation in an extracurricular martial arts

class; (2) unilaterally signing Children up for an after-school care program in apparent anticipation of the trial court granting his requested custody modifications; and (3) attempting to institute an independent educational plan ("IEP") for I.S. without obtaining Mother's approval. *See* Second Amended Petition for Contempt, 4/5/22, at ¶¶ 5-26.

On June 29, 2022, the trial court directed the parties to participate in mediation and entered an interim custody order, which preserved the existing custody parameters. *See* Interim Order for Custody, 6/29/22, at 1-16 ("Interim Custody Order"). Ultimately, the mediation proved unsuccessful.

On September 9, 2022, Father submitted a pre-trial proposed parenting plan, which evinced a significant change in the scope of the custody modifications he was requesting. Under this newly proposed plan, Father now sought to: (1) assume sole legal custody of Children with respect to medical care, mental health care, discipline, educational matters, and sports activities; and (2) institute a year-round, 2-2-5-5-day shared physical custody schedule. *See* Father's Parenting Plan, 9/9/22, at 1-7. In a pre-trial memorandum, Father affirmed that both physical **and** legal custody would now be at-issue in the upcoming custody trial. *See* Father's Memorandum for Pre-Trial Conference, 9/9/22, at 2. Mother's pre-trial submissions argued in favor of essentially preserving the then-existing custody arrangement. *See* Mother's Parenting Plan, 9/15/22, at 2 (requesting continued shared legal custody of Children and a physical custody division mirroring the earlier stipulations).

- 4 -

On October 17, 2022, Attorney Hoke withdrew her appearance on behalf of Father, and was replaced by Andrew B. Brown, Esquire. The same day, Father filed an answer to Mother's April 5, 2022, second amended contempt petition, which also included a counterpetition for contempt alleging that Mother had violated the terms of custody under a number of different theories. *See* Answer and Counter Petition, 10/17/22, at ¶¶ 25-43. Following his entry of appearance, Attorney Brown neither withdrew nor amended any of Father's earlier submissions to the court concerning his custody modification requests.

The trial court held a custody trial on December 27, 2022, wherein Father, Mother, Stepmother, maternal grandmother, and Mother's workplace supervisor testified. On January 4, 2023, the trial court filed a final custody order, which awarded: (1) Mother sole legal custody of Children; (2) Mother primary physical custody during the school year, with Father having partial physical custody on alternating weekends; and (3) equally shared physical custody during the summer months. *See* Final Custody Order, 1/4/23, at 1-7. The same day, the trial court also issued an order denying and dismissing Mother's petition for contempt. *See* Order, 1/4/23, at 1-2. The trial court did not enter an order with respect to Father's counterpetition for contempt.

On February 2, 2023, Father filed a timely notice of appeal from the final custody order along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Thereafter, the trial court

submitted a responsive opinion explaining its reasoning pursuant to Rule 1925(a)(2)(ii). *See* Trial Court Opinion, 2/22/23, at 1-15.

Father has raised the following issues for our consideration:

1.    Did the trial court err as a matter of law and abuse its discretion in awarding [M]other sole legal custody of [Children]?

2.    Did the trial court err as a matter of law and abuse its discretion in awarding [M]other primary physical custody?

3.    Did the trial court err as a matter of law and abuse its discretion by failing to address Father's petition for contempt?

4.    Did the trial court err as a matter of law and abuse its discretion in awarding sole legal custody to [M]other when the only request for relief made by [M]other which was before the court was [M]other's petition for contempt, when the court dismissed Mother's petition for contempt in the same proceeding?

5.    Did the trial court err as a matter of law and abuse its discretion in significantly decreasing [F]ather's rights of partial physical custody based on the record before it, and in light of that [sic] [M]other's only request was that [F]ather be held in contempt, which request was denied?

Appellant's Brief at 4-5.

Although Father has set forth five separate claims in his brief's statement of questions presented, his actual arguments discuss several of these points collectively. *See id*. at 14-48. Our review leads us to conclude that Father is actually advancing only three arguments, namely:  (1) that the trial court erred in modifying the legal custody of Children without sufficient notice to Father that legal custody would be at-issue in the custody proceedings; (2) that the trial court erred by entering custody modifications

- 6 -

that were not explicitly requested by Parents; and (3) that the trial court erred by failing to issue a ruling on Father's counterpetition for contempt. *Id*.

Our standard of review in this matter is deferential:

Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Rogowski v. Kirven*, 291 A.3d 50, 60-61 (Pa. Super. 2023) (brackets, internal citations and quotations omitted).

As with all custody-related matters, this Court's "paramount concern is the best interest of the child involved." *Id*. at 61 (brackets, internal citation and quotation omitted). Indeed, Pennsylvania law provides that the trial court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S.A. § 5338(a). To that end, the Child Custody Act sets forth sixteen factors at 23 Pa.C.S.A. § 5328(a) that a court must consider prior to modifying an existing custody order. ***See E.B.***

*v. D.B.*, 209 A.3d 451, 460 (Pa. Super. 2019). While a court's consideration of these factors is mandatory, "[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *Id*. (internal citation omitted). In order to evidence its consideration of these required elements, trial courts must set forth a discussion of these best-interest factors "prior to the deadline by which a litigant must file a notice of appeal." *A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014).

Here, the trial court provided a timely and complete assessment of the Section 5328(a) factors at the conclusion of the custody hearing on December 27, 2022. *See* N.T., 2/27/22, at 222-31. The trial court determined that the factors at Section 5328(a)(2), (2.1), (5), (7), (8), and (14) were not relevant in this particular dispute. Concomitantly, the trial court concluded that the factors at Section 5328(a)(1), (3), (6), (11), (13), and (15) were neutral and favored neither party. The trial court concluded that the factors at Section 5328(a)(4), (9), (10), and (12) favored Mother. Finally, the trial court did not make any findings with respect to Section 5328(a)(16), or place any weight on any specific supplemental factors, but merely reiterated its earlier findings.[1]

---

[1] Father has not challenged any of these findings in his brief to this Court.

We begin by addressing Father's notice claim, wherein he cites to a line of Pennsylvania cases "standing for the general proposition that a litigant in custody court is entitled to notice when specific aspects of the litigant's custody order are subject to modification." **See** Father's Brief at 15. Specifically, Father argues that "neither [M]other or [F]ather were asking or expecting the trial court to review or modify the legal custody aspects of their order, despite their differences on the issue." **Id**. at 27-28. Therefore, he asserts the trial court's custody order must be vacated. **Id**. at 28-30.

As a matter of due process, our precedent recognizes that child custody litigants must be provided both notice and an opportunity to be heard regarding the issues to be addressed in such proceedings. **See J.M. v. K.W.**, 164 A.3d 1260, 1268 (Pa. Super. 2017) (*en banc*) ("Formal notice and an opportunity to be heard are fundamental components of due process when a person may be deprived in a legal proceeding of a liberty interest, such as . . . a parent's custody of [his] child."). "Notice, in our adversarial process, ensures that each party is provided adequate opportunity to prepare and thereafter properly advocate its position[.]" **Langendorfer v. Spearman**, 797 A.2d 303, 309 (Pa. Super. 2002). As this Court has explained, when an issue "is first stated only in the court's resolution of it, the unsuspecting party has no opportunity during the proceedings to voice his objections or match his case to the altered issue." **In the Interest of M.B.**, 514 A.2d 599, 601 (Pa. Super. 1986). Accordingly, such notice must be provided "at a meaningful time in a

meaningful manner." ***Everett v. Parker***, 889 A.2d 578, 580 (Pa. Super. 2005) (internal citation and quotation marks omitted).

In his brief, Father claims that he only became aware that legal custody of Children would be addressed at the December 27, 2022 custody trial near the end of that proceeding. ***See*** Father's Brief at 28 ("The first time the court indicated that legal custody was a justiciable issue was midway through [M]other's cross-examination after [F]ather had already concluded his case in chief.") (citing N.T., 12/27/22, at 188). Thus, Father contends that he received neither notice nor an opportunity to be heard on this issue. In support of his position, he has cited a number of non-precedential writings from this Court, particularly emphasizing the holding in ***D.D.M. v. N.L.W.***, 237 A.3d 492 (Pa. Super. 2020) (non-precedential decision at 5-6) (holding that the trial court "violated [a father's] procedural due process rights by deciding a matter that, by its own assertion, was not before the court.").[2]

Initially we note that here, the trial court noted at several points during the custody trial that it would be making a ruling regarding legal custody of Children, as requested by Father. ***See*** N.T., 2/17/23, at 187-88, 210-11. Father advanced no contemporaneous objection following these pronouncements. Father's arguments sound in due process, which are

---

[2] ***See*** Pa.R.A.P. 126(b) (providing that the unpublished, non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

generally subject to principles of waiver under Pennsylvania law. *See Pa. Bankers Ass'n v. Pa. Dept. of Banking*, 962 A.2d 609, 622 (Pa. 2008). On this ground alone, we could find that Father has waived any claim regarding due process for failing to raise the matter in a seasonable fashion before the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Assuming, for the sake of argument, that Father's due process claim is not waived, we find that his arguments misrepresent the substance of his own filings in the trial court. As detailed above, Father's pre-trial submissions explicitly sought substantial changes with respect to the legal custody of Children. *See* Father's Parenting Plan, 9/9/22, at 2 (requesting that Father be awarded sole legal custody with respect to Children's medical care, mental health care, discipline, educational matters, and sports activities); Father's Memorandum for Pre-Trial Conference, 9/9/22, at 2 (noting that one of the questions to be addressed at the trial was "[w]hether it is in the best interests of [Children] for the parties to share legal custody of [Children]?").

These documents undercut the entirety of Father's argument concerning an alleged lack of notice by making it clear that Father received actual and sufficient notice that legal custody would be at-issue during the December 27, 2022 custody trial. In fact, he was the party responsible for raising this specific issue in his submissions to the trial court. Furthermore, Father was also afforded an adequate opportunity to present evidence in support of his own

requests regarding legal custody at trial. Accordingly, no relief is due on Father's first issue. ***See, e.g., C.A.J. v. D.S.M.***, 136 A.3d 504, 507 (Pa. Super. 2016) ("[I]f notice of the proceeding adequately advises a party that custody will be at issue, a court may entertain the request to permanently modify a custody order after hearing in that proceeding." (internal citation, quotation marks, and emphasis omitted)).

Father's second claim for relief is very similar to his first, but it concerns the permissible scope of the trial court's custody order as opposed to Father's purported lack of notice. Specifically, Father argues that the trial court exceeded its ambit by making custody modifications that were not directly requested by either Mother or Father. ***See*** Father's Brief at 32 ("Neither party sought a significant change in the . . . custody arrangements which had existed for approximately four years prior to [F]ather initiating his petition."). Father essentially asserts that the trial court was only empowered to enact custody modifications that had been specifically requested in a petition for custody modification. ***See id***. at 32 (citing 23 Pa.C.S.A. § 5338(a)).

It is axiomatic that "[c]ourts cannot rule on matters not before them." ***In the Interest of M.B.***, 514 A.2d 599, 600 (Pa. Super. 1986). However, it is equally well-settled that "no custody order is permanent." ***G.B. v. M.M.B.***, 670 A.2d 714, 716 n.2 (Pa. Super. 1996). To the contrary, "[a]ll custody orders are subject to modification upon a showing that a change in current custody arrangements would be in the child's best interest." ***Id***.

Here, as detailed above, Father first filed a petition to modify custody raising issues pertaining to physical custody of Children. *See* Petition for Modification, 3/7/22, at ¶ 5(a)-(c). Thereafter, however, Father submitted a supplemental proposed parenting plan and a pre-trial memorandum which clearly represented that Father was raising issues pertaining to both physical and legal custody. *See* Father's Parenting Plan, 9/9/22, at 2; Father's Memorandum for Pre-Trial Conference, 9/9/22, at 2. To the extent that Father's arguments represent that his custody modification requests were merely "minimal" in scope, he has grossly misstated the nature of his filings in the trial court. Contrary to his arguments, Father's pre-trial submissions unambiguously represent that he was seeking a complete restructuring of the parties' custody arrangements, *i.e.*, both legal and physical custody.[3] Moreover, he had full notice of his own representations to the trial court.

Custody modifications are ordinarily sought by filing a petition in the trial court pursuant to Section 5338(a). *See* 23 Pa.C.S.A. § 5338(a) ("Upon petition, a court may modify a custody order to serve the best interest of the child."). Typically, "[a] petition for modification must be filed in order for a court to review a case for permanent modification of a custody order." *S.W.D. v. S.A.R.*, 96 A.3d 396, 405 (Pa. Super. 2014). However, we emphasize that a petition to modify custody may be filed "at any time." *Id*.

---

[3] As the trial court aptly observed: "Father sought to alter the custody awards and clearly, now, regrets the result." Trial Court Opinion, 2/22/23, at 13.

- 13 -

The touchstone with respect to the validity of such requests is whether it provides adequate notice of the custody modifications being sought. ***See id.*** ("[I]f notice of the proceeding adequately advises a party that custody will be at issue, a court may entertain the request to permanently modify a custody order after hearing in that proceeding."). Under this principle, this Court has countenanced custody modifications that have occurred as a result of contempt and school choice proceedings and in the absence of a filing that is explicitly styled as a request to modify custody. ***See Guadagnino v. Montie***, 646 A.2d 1257, 1262 (Pa. Super. 1994); ***see also S.W.D.***, 96 A.3d at 406. While Father's requests for modification with respect to legal custody and the 2-2-5-5-day physical custody schedule were not explicitly styled as modification petitions, they were sufficiently specific to provide all parties with notice of the full extent of Father's petition. ***Id***. As such, the court was tasked with effectuating the best interests of the Children, not simply choosing between the positions set forth by the parties.

Based on the foregoing, we conclude that the scope of the trial court's final custody award was entirely proper based upon the filings and requests for modification submitted by Father in the trial court. ***Accord S.W.D.***, 96 A.3d at 406; ***Guadagnino***, 646 A.2d at 1262. Since these filings conclusively

evince that Father received notice that modifications respecting both legal and physical custody would be addressed at trial, no relief is due.[4]

Father's third and final claim for relief concerns the trial court's failure to rule upon his counterpetition for contempt. **See** Father's Brief at 46 ("Despite being pled, and despite testimony being offered on various aspects of the contempt petition, [F]ather's contempt petition was not disposed of in the court's final order."). The trial court acknowledges that it did not rule upon Father's counterpetition. **See** Trial Court Opinion, 2/22/23, at 9-10. Critically, however, Father has made no attempt to connect the trial court's failure to rule upon his counterpetition to the validity or finality of the custody

---

[4] Although the main thrust of Father's second claim is undeniably focused upon the scope of the trial court's order, he argues in passing that the trial court's holding was "egregious in light of the evidence presented at trial." Father's Brief at 41. Specifically, he asserts that the trial court was required to find that Children were "adversely affected" by the existing custody schedule prior to ordering any modification. **Id**. at 43 ("Absent any showing that the existing physical custody arrangements were adversely affecting [Children], then, to disturb the long-standing arrangements was error and an abuse of discretion."). No relief is merited by these arguments.

Father's position significantly misapprehends the "paramount" legal touchstone governing custody modifications, which is the "best interests" of children, as opposed to whether they have been "adversely affected" by an existing custody order. **See, e.g., Rogowski**, 291 A.3d at 61. Tellingly, Father makes no attempt to challenge any of the specific findings of the trial court with respect to Children's best interests. Therefore, to the extent that Father intends to challenge the trial court's findings with respect to Children's best interests, such argument is waived. **See C.H.L. v. W.D.L.**, 214 A.3d 1272, 1276 (Pa. Super. 2019) ("It is well-established that the failure to develop an argument with citation to, and analysis of, pertinent authority results in waiver of that issue on appeal.").

determination in this matter, *i.e.*, the matter from which he has appealed. *See G.B. v. M.M.B.*, 670 A.2d 714, 720 (Pa. Super. 1996) ("[A] custody order will be considered final and appealable only if it is both:  1) entered after the court has completed its hearings on the merits; and 2) intended by the court to constitute a complete resolution of the custody claims pending between the parties."). Furthermore, Father notes that he had a full and fair opportunity to address his allegations of contempt at the custody trial in this matter. *See* Father's Brief at 46 (citing N.T., 12/27/22, at 73, 76-78, 191-93, 196-97). Accordingly, the trial court was able to consider these allegations in determining custody.

We also note that the only relief requested in Father's counterpetition was a finding of contempt against Mother and the imposition of attorney's fees as a sanction. *See* Answer and Counter Petition, 10/17/22, at ¶ 43. "An order of contempt is final and appealable when the order contains a present finding of contempt and imposes sanctions." *In re K.K.*, 957 A.2d 298, 303 (Pa. Super. 2008). Since the trial court did not explicitly rule on Father's petition for contempt, we do not have jurisdiction to review Father's claim of error. For the sake of completeness, however, we remand this matter to the trial court to issue an explicit ruling.

Order affirmed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2023